2005-NMSC-021

117 P.3d 240

Jack R. PAULE, M. June Paule, James A. Meyer, Marilyn K. Meyer, Paul Chavez, Connie Chavez, Nancy Williams, and Camilia Trujillo, Plaintiffs–Respondents,

v.

SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS, Estevan Gonzales, and Skyhigh Communications, L.L.C., Defendants–Petitioners.

No. 28,038.

Supreme Court of New Mexico.

May 26, 2005.

84

Long, Pound & Komer, P.A., Nancy R. Long, Santa Fe, NM, Santa Fe Board of County Commissioners, Steven Kopelman, Monica Ontiveros, Santa Fe, NM, for Petitioners.

Roth, VanAmberg, Rogers & Yepa, L.L.P., Ronald J. VanAmberg, Santa Fe, NM, for Respondents.

## OPINION

MAES, Justice.

{1} Petitioners SkyHigh Communications, Estevan Gonzales, and the Santa Fe County Board of County Commissioners (hereinafter "Commission") appeal from a decision of the district court reversing a decision by the Commission approving SkyHigh's application for master plan zoning and a height variance. The issue on appeal to this Court only involves the Commission's approval of the variance. Petitioners sought review of the district court's decision in the Court of Appeals by filing a petition for a writ of certiorari. *See* NMSA 1978, § 39-3-1.1(E) (1999) (permitting a party to petition the Court of Appeals for a writ of certiorari to review the district court's decision in an administrative appeal); Rule 12-505(B) NMRA 2005 (same). The Court of Appeals granted the petition, but after briefing by the parties, the court quashed the writ without any explanation. Petitioners then petitioned this Court for a writ of certiorari, which we granted. *See* § 39-3-1.1(E) ("A party may seek further review by filing a petition for writ of certiorari with the supreme court."); Rule 12-505(J) (stating that a party may seek further review from a decision of the Court of Appeals or a denial of certiorari by the Court of Appeals with Supreme Court by petitioning the Supreme Court for a writ of certiorari).

{2} Petitioners assert the following issues in their certiorari petition: (1) the district court's decision to find that SkyHigh's application was not approved based on the Commission's vote at the public hearing rather than the Commission's final order is contrary to Section 39-3-1.1 and Rule 1-074 NMRA 2005; (2) the district court impermissibly substituted its judgment for that of the Commission when it concluded that the Commission's decision to approve SkyHigh's application was not supported by substantial evidence; and (3) the district court judgment violates the federal Telecommunications Act of 1996, 47 U.S.C. § 332 (1996). Another issue that we asked the parties to comment on was the Court of Appeals order quashing the writ of certiorari. In addition to these issues, Petitioner Commission argues in its briefs to this Court that the district court should have dismissed Respondents' appeal to the district court because it was untimely. We reverse.

## FACTS

{3} SkyHigh filed an application with Santa Fe County officials in which it sought approval for master plan zoning and a height variance so that it could build a 198-foot telecommunications facility in the county. Under the Santa Fe County Land Development Code, a telecommunications facility is a use permitted anywhere within the county. Thus, the land does not have to be re-zoned to allow the construction of such facilities because such facilities are permitted uses under the Code. However, structures are limited to a height of 24 feet under the Code.

{4} A public hearing on SkyHigh's application was held before the Commission on December 12, 2000. The application was heard by four of the five commissioners. The one commissioner who did not participate recused himself because he was related to the applicant. At the hearing, SkyHigh presented evidence as to why its application should be approved. Afterwards, the Commission heard from several concerned citizens, including Respondents, all of whom opposed the application. The Commission voted on the application immediately following public comment. Two commissioners voted in favor of the application; one commissioner voted against the application; and the chairperson did not cast a vote. The meeting was then adjourned.

{5} On December 28, 2000, the Commission issued a written order in which it approved SkyHigh's application, subject to conditions. In the order, the Commission made several factual findings as to why it was approving the application.

{6} Respondents appealed the Commission's decision to the district court on January 26, 2001. The district court reversed the Commission's decision on two grounds. First, the district court found that the Commission had acted arbitrarily and capriciously in approving the application because the vote was not taken in accordance with the Commission's procedural rules. Second, the district court found that the Commission's

approval of the height variance was not supported by substantial evidence.

{7} Petitioners then petitioned the Court of Appeals for a writ of certiorari to review the district court's decision. The Court of Appeals initially granted the petition, but following briefing, the court quashed the writ. Petitioners then petitioned this Court for a writ of certiorari, which we granted.

## DISCUSSION

{8} The first issue we address is Petitioner Commission's claim that Respondents' appeal to the district court was untimely under Section 39–3–1.1 and therefore should have been dismissed by the district court. This issue was not raised in the certiorari petition, *see* Rule 12–502(C)(2) NMRA 2004 (providing that "only the questions set forth in the petition will be considered by the Court"), but we address the issue because if Respondents' appeal to the district court had been untimely, we would not have granted the petition.

{9} Section 39–3–1.1 sets forth the time frame for administrative appeals to the district court. *See also* Rule 1–074. Section 39–3–1.1(C) provides that "a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision." *See* Rule 1–074(E) ("Unless a specific time is provided by law or local ordinance, an appeal from an agency shall be filed in the district court within thirty (30) days after the date of the final decision or order of the agency."). "Final decision" is defined in Section 39–3–1.1(H)(2) as "an agency ruling that as a practical matter resolves all issues arising from a dispute within the jurisdiction of the agency, once all administrative remedies available within the agency have been exhausted." Subsection (H)(2) further provides that "[t]he determination of whether there is a final decision by an agency shall be governed by the law regarding the finality of decisions by district courts." "The general rule in New Mexico for determining the finality of a judgment is that 'an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible.'" *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (quoting *B.L. Goldberg & Assocs. v. Uptown, Inc.*, 103 N.M. 277, 278, 705 P.2d 683, 684 (1985)).

{10} Petitioner Commission asserts that Respondents' appeal to the district court was untimely because it was not filed within thirty days of a "final decision" as specified in Section 39–3–1.1. Respondents counter by asserting that the appeal was timely filed because it was filed within thirty days of the Commission's written order, which Respondents claim was a final decision. Disagreeing with Respondents' assertion, Petitioner Commission asserts that Section 39–3–1.1 explicitly distinguishes between "final decision" and "written decision," and specifically states that the time for filing an appeal to the district court commences upon the issuance of a "final decision," not a "written decision." Petitioner Commission asserts that the legislature's decision to use the term "final decision" rather than "written decision" indicates that the legislature intended that the time for filing the appeal to begin upon the issuance of the final decision and not a written decision. Consequently, Petitioner Commission contends that the December 12 vote was a "final decision" for purposes of Section 39–3–1.1. Thus, Petitioner Commission asserts that Respondents had thirty days to file their appeal from this date and not the date that its written order was filed.

{11} We do not interpret the time limit provision in Section 39–3–1.1 as rigidly as Petitioner Commission. Subsection B details the procedure that an agency must follow when it issues a final decision. A "final decision" for purposes of Section 39–3–1.1 is "an agency ruling that as a practical matter resolves all issues arising from a dispute within the jurisdiction of the agency, once all administrative remedies available within the agency have been exhausted." Section 39–3–1.1(H)(2). When an agency issues a final decision, subsection B requires it to promptly prepare and file a written decision that includes "an order granting or denying relief and a statement of the factual and legal basis for the order." The agency must then promptly "serve a document that includes a

copy of the written decision and the requirements for filing an appeal of the final decision" on all parties to the administrative proceeding and any person who filed "a written request for notice of the final decision in that particular proceeding." Section 39–3–1.1(B)(3), -(a), -(b). It appears that this document serves the important purpose of informing the aggrieved parties of the requirements for appealing the administrative decision. *See Village of Angel Fire v. Wheeler*, 2003–NMCA–041, ¶ 33, 133 N.M. 421, 63 P.3d 524, *cert. denied*, No. 27,882, 133 N.M. 413, 63 P.3d 516 (Feb. 10, 2003). Subsection C of Section 39–3–1.1 details the appeal process to the district court. Subsection C provides that "a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of *filing* of the final decision." (Emphasis added.) Rule 1–074(E) similarly provides that "[u]nless a specific time is provided by law or local ordinance, an appeal from an agency shall be filed in the district court within thirty (30) days after the date of the *final decision or order* of the agency." (Emphasis added.) As subsection B provides, it is the written decision of the agency's final decision that is filed. Thus, we conclude that the time for filing an administrative appeal to the district court under Section 39–3–1.1 begins to run on the date the final decision or order is filed. In the present case, the Commission's final decision was filed on December 28. Therefore, Respondents had thirty days from this date to file their appeal. Respondents' appeal, which was filed on January 26, was within the thirty-day period, and thus, was timely filed.

{12} Petitioner Commission asserts that its position is supported by *Maples v. State*, 110 N.M. 34, 791 P.2d 788 (1990), which it claims similarly recognized the distinction between a final decision and a written decision for purposes of filing an administrative appeal. We disagree. The issue in *Maples* was whether the plaintiff's administrative appeal to the judiciary was inequitably barred based on her contention that she was not aware of the administrative decision until after the time for appealing had expired. *Id.*

at 34–35, 791 P.2d at 788–89. This Court concluded that the plaintiff's appeal was not inequitably barred because her attorney was aware of the hearing officer's rulings from the bench. *Id.* at 35, 791 P.2d at 789. Consequently, this Court stated that the plaintiff could have preserved her appeal in several ways, including filing an immediate appeal while the decision was pending filing. *Id.* Thus, *Maples* involved a determination as to whether a plaintiff's administrative appeal should be heard after the time for filing an appeal had elapsed where the plaintiff was unaware of the final administrative decision. It did not set forth a rule governing the filing of administrative appeals. Indeed, *Maples* recognized that under the relevant procedural rule, plaintiff had thirty days from the final order's filing date, which occurred after the hearing officer's oral ruling. *See id.* at 34, 791 P.2d at 788.

{13} We next address the Court of Appeals' order quashing the writ of certiorari. Petitioners assert that the Court of Appeals should not have quashed the writ of certiorari because the issues were significant, thereby requiring review by the Court of Appeals. Respondents assert, on the other hand, that the Court of Appeals properly quashed the writ because "the failure to allow a variance in this circumstance did not rise to the level of importance contemplated by Rule 12–502 for the Court of Appeals to grant a Writ of Certiorari." Additionally, Respondents assert that the untimeliness of the petition to the Court of Appeals supported the quashing of the writ; Respondents submit that the Court of Appeals may have quashed the writ on this ground, which Respondents raised in a motion to dismiss to the Court of Appeals.

{14} A party aggrieved by the district court's order in an administrative appeal may seek review of the decision by filing a petition for writ of certiorari with the Court of Appeals. Section 39–3–1.1(E); *see also* Rule 12–505(B) ("A party aggrieved by the final order of the district court in [an administrative appeal] may seek review of the order by filing a petition for writ of certiorari with the Court of Appeals . . . ."). The decision to grant the writ "rests in the sound discretion of the Court of Appeals." *C.F.T.*

*Dev., LLC v. Bd. of County Comm'rs,* 2001–NMCA–069, ¶ 8, 130 N.M. 775, 32 P.3d 784, *overruled on other grounds by Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n,* 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806; *see also* § 39–3–1.1(E); Rule 12–505(B). Therefore, we will not review the Court of Appeals' decision to quash the writ of certiorari, as the disposition of the writ rests with the discretion of the court. However, following "the disposition of a petition for writ of certiorari by the Court of Appeals, a party may seek further review from a decision of the Court of Appeals or a *denial of certiorari* by the Court of Appeals by filing a petition for writ of certiorari with the Supreme Court." Rule 12–505(J) (emphasis added); *accord* § 39–3–1.1(E) ("A party may seek further review by filing a petition for writ of certiorari with the supreme court."); *see also* Rule 12–502(A) ("This rule governs petitions for the issuance of writs of certiorari seeking review of decisions of the Court of Appeals and of *actions* of the Court of Appeals pursuant to Rule 12–505." (Emphasis added.)).

◼ {15} The four grounds on which this Court may grant a petition for writ of certiorari to review the decision of the Court of Appeals are: (1) a conflict between the Court of Appeals' decision and a decision of this Court; (2) a conflict between the Court of Appeals' decision and another Court of Appeals' decision; (3) the involvement of a significant question of law under the state or federal constitution; and (4) the presence of an issue of substantial public interest that should be determined by the Supreme Court. *See* Rule 12–502(C)(4). "The critical issue under Rules 12–502 and 12–505 is whether the case presents issues of significant importance to justify the granting of a writ of certiorari. . . ." *Rio Grande,* 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806.

◼ {16} This case presents several issues of significant importance to justify this Court's review. First, it raises the applicability of the federal Telecommunications Act of 1996, 47 U.S.C. § 332, and its compliance mandates on local governments. Second, it implicates the deferential standard of review normally afforded to decisions of New Mexico administrative bodies like the Commission. *See Rowley v. Murray,* 106 N.M. 676, 679, 748 P.2d 973, 976 (Ct.App.1987) (noting "[t]his standard reflects a respect for the governing body's legislative function"); *see also Zamora v. Village of Ruidoso Downs,* 120 N.M. 778, 782, 907 P.2d 182, 186 (1995) (same). We believe the district court may have given insufficient deference to the procedural process, factual findings and final decision of the Commission as an independent administrative body. Therefore, we find that there are sufficient grounds to justify our review of this matter.

◼ {17} Respondents submit that the Court of Appeals may have accepted the argument presented in their motion to dismiss the petition, that the petition was untimely filed, and thus may have quashed the writ on this basis. Petitioners SkyHigh and Gonzales assert that the timeliness of the appeal is not an issue before this Court because it was not appealed. We address this issue because an untimely appeal to the Court of Appeals would be a basis for affirming the district court's decision without further review or for affirming the district court if we should reverse on the merits. *See* Rule 12–201(C) NMRA 2005 ("Review without cross-appeal").

{18} In the instant case, the district court entered judgment on January 11, 2002. On January 18, 2002, the Commission filed a motion for reconsideration. On January 23, 2002, Gonzales and SkyHigh filed a motion for reconsideration. On March 8, 2002, the district court denied the motions for rehearing. On March 25, 2002, SkyHigh filed its petition for writ of certiorari. On March 28, 2002, the Commission filed its petition for writ of certiorari.

{19} Section 39–3–1.1 is a "comprehensive administrative appeals" statute which delineates "the method for obtaining judicial review of final decisions of certain administrative agencies." *Hyden v. N.M. Human Servs. Dep't,* 2000–NMCA–002, ¶ 8, 128 N.M. 423, 993 P.2d 740. Rule 1–074 also "governs appeals from administrative agencies to the district courts." Under Rule 1–074(R), a party may file a motion for reconsideration

"within ten (10) days after filing of the district court's final order." There is no provision within Rule 1–074 which provides that a motion for reconsideration not acted upon by the district court within a certain amount of time is deemed denied by operation of law.

{20} Section 39–3–1.1(E) provides that "[a] party to the appeal to district court may seek review of the district court decision by filing a petition for writ of certiorari with the court of appeals, which may exercise its discretion whether to grant review. A party may seek further review by filing a petition for writ of certiorari with the supreme court." Section 39–3–1.1(G) provides that "[t]he procedures governing appeals and petitions for writ of certiorari that may be filed pursuant to the provisions of this section shall be set forth in rules adopted by the supreme court." Rule 1–074(T) provides that "[a]n aggrieved party may seek review of an order or judgment of the district court in accordance with the Rules of Appellate Procedure."

{21} Rule 12–505 "governs review by the Court of Appeals of decisions of the district court" in cases where the district court reviews the actions of an administrative agency. *See Hyden*, 2000–NMCA–002, ¶ 2, 128 N.M. 423, 993 P.2d 740 (stating that Rule 12–505 specifies the "procedure for obtaining such appellate review"). Rule 12–505(C) provides that the "petition for writ of certiorari shall be filed with the clerk of the Court of Appeals within twenty (20) days after *entry* of the final action by the district court." (Emphasis added). Rule 12–505(C) defines "final action" as "the filing of a final order or judgment in the district court unless timely motion for rehearing is filed, in which event, final action shall be the *disposition* of the last motion for rehearing which was timely filed." (Emphasis added). There is no provision within Rule 12–505 which provides that a motion not acted upon by the district court within a certain amount of time is deemed denied by operation of law.

{22} In their motion to dismiss the petition for writ of certiorari to the Court of Appeals, Respondents argued that the motions for rehearing were denied by operation of law under Rule 12–404 NMRA 2005, when they were not acted upon by the district court

within thirty days of their filing. *See* Rule 12–404(C) ("Any motion for rehearing not acted upon within thirty (30) days after it is filed shall be deemed denied unless otherwise ordered by the court."). Thus, the issue boils down to whether Petitioners' motions for reconsideration were denied by operation of law when they were not acted upon within thirty days of their filing. If they were deemed denied by operation of law, then the petitions for writ of certiorari to the Court of Appeals were untimely. Conversely, if they were not deemed denied by operation of law, then the petitions were timely.

{23} Respondents' argument is apparently based on language in Rule 1–074(T), which states that "[a]n aggrieved party may seek review of an order or judgment of the district court in accordance with the *Rules of Appellate Procedure*." (Emphasis added). Although we acknowledge the confusion inadvertently created by the promulgation of the various rules governing appellate procedure, we conclude that Rule 12–404 does not apply to this situation. Rule 12–404(A) gives a time limit different from Rule 1–074(R) as to when a motion for rehearing must be filed (fifteen days as opposed to ten days). Rule 1–074, by its very terms, applies specifically to the review of *administrative* decisions in the *district courts*, whereas Rule 12–404 seems to apply only to rehearings in general, specifically to those before the Supreme Court and the Court of Appeals. *See* Rule 12–101 NMRA 2005 ("These rules govern procedure in appeals to the supreme court and the court of appeals . . . .") (Emphasis added.) Here, the motion for rehearing was filed in the district court. In the motion, the district court was being asked to reconsider its ruling. Finally, the procedure governing certiorari review by the Court of Appeals in administrative agency appeals seems to be wholly addressed by Rule 12–505. *See* Rule 12–505(A) ("This rule governs review by the Court of Appeals of decisions of the district court."); *cf. Hyden*, 2000–NMCA–002, ¶ 2, 128 N.M. 423, 993 P.2d 740 (stating that Rule 12–505 outlines the procedure for appellate review of administrative agency decisions in the Supreme Court and Court of Appeals).

{24} Under these applicable rules, we find there is no provision which provides that a motion for reconsideration or rehearing is deemed denied by operation of law if it is not acted upon by the district court within a certain time period. Without any such language, the petitions for writ of certiorari to the Court of Appeals may be considered timely filed since they were filed within twenty days of the district court's March 8 order. We find additional support for this position in *Vigil v. Thriftway Mktg. Corp.*, 117 N.M. 176, 178, 870 P.2d 138, 140 (Ct.App.1994), in which the court found that a worker's motion for reinstatement was not deemed denied by operation of law under NMSA 1978, § 39-1-1 (1917) because it was filed "pursuant to [Rule] 1-041(E) [NMRA 2005], which does not contain a provision saying that motions filed pursuant to it are deemed denied if not acted upon within a certain amount of time." *State v. Shirley*, 103 N.M. 731, 732-733, 713 P.2d 1, 2-3 (Ct.App.1985), which did not address Section 39-1-1, is nonetheless instructive because again, the court held that where the governing rule of criminal procedure did not provide a time limit for the district court's decision on a post-conviction motion for a new trial and absent any showing that the court failed to act within a reasonable amount of time, the motion was not deemed denied automatically after thirty days but only when the trial court actually ruled on the motion.

{25} Because there is no provision stating that a motion for reconsideration is deemed denied if not acted upon within a certain time frame, we conclude that the petitions were timely filed when they were filed within twenty days of the district court's final order. Therefore, we reject Respondents' assertion that this may have been the basis on which the Court of Appeals quashed the writ.

{26} We now turn to the issues raised in the certiorari petition and simultaneously review the decisions of the district court and the Commission regarding the Commission's approval of SkyHigh's variance application. In administrative appeals, we review the administrative decision under the same standard of review used by the district court while also determining whether the district court erred in its review. *Rio Grande*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. Administrative decisions are reviewed under an administrative standard of review. *Id.* ¶ 17. Under this standard of review, reviewing courts are limited to determining whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law. *See* § 39-3-1.1(D); Rule 1-074(Q); *Rio Grande*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806. In the present case, the district court reversed the Commission's decision on the grounds that it was arbitrary and capricious, and was not supported by substantial evidence. We review each ground in turn.

{27} The district court's decision that the Commission acted arbitrarily and capriciously in approving SkyHigh's application was based on the district court's determination that the Commission failed to comply with its procedural rules when it voted on the application at the public hearing on December 12. At the start of the Commission's December 12 meeting, the Commission passed Resolution 2000-164. Resolution 2000-164 altered the chairperson's voting power and was intended to repeal Resolution 1999-154. Under Resolution 1999-154, the chairperson voted only in the instance of a tie vote. In the instance where there were more affirmative votes than negative votes, but still insufficient votes to constitute a majority, the chairperson's vote was automatically deemed to apply to the majority position in order to create an actual majority. Resolution 2000-164, on the other hand, did not limit the chairperson's voting power to breaking tie votes, but instead gave him or her the same voting power as the other commissioners. Unlike Resolution 1999-154, under Resolution 2000-164, the chairperson's vote was not automatically attributed to the majority position. Both resolutions required a majority vote of all commissioners present for all motions and action items to pass. Thus, to be approved under either resolution, SkyHigh's variance application needed the votes of at least three of the four present and participating commissioners. After passing Resolution 2000-164 and resolving other matters, the

Commission heard SkyHigh's variance application. After hearing from SkyHigh and the public, the Commission immediately voted on the application. Two commissioners voted to approve the application, one commissioner voted against the application, and the chairperson did not vote. The meeting immediately ended without any announcement of the Commission's decision. The Commission issued a final written order a few weeks later in which it approved the application subject to certain conditions.

{28} In its review, the district court determined that SkyHigh's application had been arbitrarily and capriciously approved because the application had failed to garner enough votes for approval under the Commission's procedural rules. The district court's determination was based on its conclusion that Resolution 2000–164 was in effect when the Commission voted on the application at the public hearing on December 12. The district court opined that without any language in Resolution 2000–164 specifying the date that the resolution was to go into effect, the presumption was that it went into effect immediately. The district court also did not view the Commission's written order as a ratification of its December 12 actions.

{29} Petitioners SkyHigh and Gonzales assert that the district court should not have reviewed this issue because it was not raised at the administrative hearing. However, we conclude that preservation of this issue was not necessary for judicial review. Generally, arguments relating to "theories, defenses, or other objections will not be considered when raised for the first time on appeal." *Wolfley v. Real Estate Comm'n,* 100 N.M. 187, 189, 668 P.2d 303, 305 (1983). The issue in the case at hand, however, concerns the Commission's decision approving SkyHigh's variance application. That decision was made during a meeting at which the Commission voted to change its voting procedure. The effective date of the change was not made clear. Under these circumstances, we are not persuaded Petitioner had an "opportunity to object" within the meaning of Rule 12–216(A) NMRA 2005 (discussing the requirements for preserving issues for review). Further, we are persuaded the ques-

tion of what voting procedure applied was a question the district court had to address in reviewing the Commission's action. " 'Any judicial review of administrative action, statutory or otherwise, requires a determination whether the administrative decision is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence.' " *Dick v. City of Portales,* 118 N.M. 541, 543, 883 P.2d 127, 130 (1994) (*quoting Regents of the Univ. of N.M. v. Hughes,* 114 N.M. 304, 309, 838 P.2d 458, 463 (1992)) (emphasis added). Since the present issue was whether the Commission acted arbitrarily and capriciously in approving SkyHigh's variance application, it was appropriate for the district court to review this issue.

{30} When we review an administrative decision for arbitrary and capricious conduct, we review "the whole record to ascertain whether there has been unreasoned action without proper consideration or disregard of the facts and circumstances." *Las Cruces Prof'l Fire Fighters v. Las Cruces,* 1997–NMCA–044, ¶ 7, 123 N.M. 329, 940 P.2d 177. Our review of the record leads us to conclude that the Commission did not abuse its discretion when it approved SkyHigh's variance application. Contrary to the district court's determination, the record shows that the application was approved in accordance with the Commission's procedural rules. The actions of the Commission and chairperson demonstrate that they considered Resolution 1999–154 to be in effect when the application was voted upon, a determination to which we believe we should defer. Except for an ordinance, which required the majority vote of all commissioners, the chairperson did not vote on any matters at the meeting, including SkyHigh's variance application. This was consistent with the voting procedures in Resolution 1999–154. When the participating commissioners voted on the application, there were more affirmative votes than negative votes, but not enough votes for the application to be approved. In this scenario, Resolution 1999–154 provided that the chairperson's vote would be applied to the majority position to allow the item to pass. The Commission issued a final order a few weeks later in which it formally approved the

application which was presumably ratified by a majority of the commissioners. Again, this was consistent with the voting procedures in Resolution 1999–154. Thus, based on the record, it is reasonable to infer that Resolution 1999–154 was in effect when the Commission voted and approved the application. Therefore, since the record shows that Resolution 1999–154 governed the Commission's voting procedure, the application was not arbitrarily and capriciously approved because it was properly approved in accordance with the Commission's procedural rules.

{31} Respondents assert that the chairperson did not vote "because he had left the meeting and did not hear [them] discuss the issues." The record belies Respondents' assertion, however. The record shows that the chairperson actively participated in the hearing. He ran the hearing, he heard from the applicant and the public, and he engaged in discussions with the public when they spoke on the application. He was also present when the commissioners discussed and voted on the matter. Consequently, we conclude that the Commission's approval of the application was conducted in conformance with Resolution 1999–154, and thus, the district court erred in concluding that the application was arbitrarily and capriciously approved.

{32} The second issue we discuss is whether the Commission's approval of SkyHigh's variance application was supported by substantial evidence. In its review, the district court concluded that the Commission's approval of the variance was not supported by substantial evidence. Courts reviewing a zoning authority's decision for substantial evidence must review the entire record to determine whether there is substantial evidence to support the decision. *Bennett v. City Council,* 1999–NMCA–015, ¶ 20, 126 N.M. 619, 973 P.2d 871. Substantial evidence means "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Watson v. Town Council of Bernalillo,* 111 N.M. 374, 376, 805 P.2d 641, 643 (Ct.App.1991). Since reviewing courts are obligated to review the entire record to determine whether the zoning authority's decision was supported by substantial evidence, they may not substitute their decision for that of the zoning authority and conclude that there is evidence supporting a different conclusion. *Siesta Hills Neighborhood Ass'n v. City of Albuquerque,* 1998–NMCA–028, ¶ 6, 124 N.M. 670, 954 P.2d 102. In its review, the court must view the evidence in the light most favorable to the decision. *Id.* Reviewing courts must uphold the zoning authority's decision if the decision is supported by substantial evidence. *Id.*

{33} The Commission's authority for granting variances is limited by the terms of the authorizing zoning statute. *See Downtown Neighborhoods Ass'n v. City of Albuquerque,* 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App.1989). The Commission's authority for granting the variance that was granted in this case is found in Article II, Section 3 of the Santa Fe County Land Development Code. Section 3.1, which addresses variances related to proposed development, reads:

Where in the case of proposed development, it can be shown that strict compliance with the requirements of the Code would result in extraordinary hardship to the applicant because of unusual topography or other such non-self-inflicted conditions or that these conditions would result in inhibiting the achievement of the purposes of the Code, an applicant may file a written request for a variance. A Development Review Committee may recommend to the Board and the Board may vary, modify or waive the requirements of the Code and upon adequate proof that compliance with [the] Code provision at issue will result in an arbitrary and unreasonable taking or [sic] property or exact a hardship, and proof that a variance from the Code will not result in conditions injurious to health or safety. In arriving at its determination, the Development Review Committee and the Board shall carefully consider the opinions of any agency requested to review and comment on the variance request. In no event, shall a variance, modification or waiver be recommended by a Development Review Committee, nor granted by the Board if by doing so the purpose of the Code would [be] nullified.

Santa Fe County Land Development Code, (N.M.1980). Further, Article II, Section 3.2 provides: "In no case shall any variation or modification be more than a minimum easing of the requirements."

{34} Thus, for a property owner to be considered for a variance under the code, he or she must show that because of unique circumstances, strict application of the zoning regulations would create an extraordinary hardship for him or her. The property owner must show that the hardship relates to the land or other "non-self-inflicted conditions," or that "these conditions would result in inhibiting the achievement of the purposes of the Code." Once the property owner has sufficiently shown his or her qualification for a variance, the Commission may then grant the variance when sufficient evidence has been shown demonstrating that strict compliance with the code would result in a confiscatory taking of the property or would "exact a hardship." The evidence must also convince the Commission that the variance "will not result in conditions injurious to health or safety." However, the code provides that the Commission may not grant the variance where doing so would result in the nullification of the code. The code decrees that the variance must be no more than a minimum easing of the regulations.

{35} Respondents assert that the district court correctly determined that the Commission had improperly granted SkyHigh's variance application because SkyHigh had failed to show the facts necessary to justify the granting of the variance. Respondents assert that the only question relevant to determining the existence of a hardship is whether the owner is being denied all reasonable use of the property. Respondents assert that there was nothing unique about the land that would require a variance and that the land could be used for other residential or commercial purposes in accordance with the zoning regulations. Thus, Respondents contend that the statutorily required hardship was not met. Respondents further assert that any hardship was self-inflicted and related to Skyhigh's personal desire to "conduct commercial activities in an inappropriate place and in an inappropriate manner." Respondents state that variances are not intended to cure such zoning defects or alleviate such "personal problems" of the property owner. Respondents additionally assert that the granting of the variance nullified the code's purpose because "it ignored zoning restrictions and ignored the requirements for variances." Finally, Respondents assert that the variance did not constitute a minimum easing of zoning requirements.

{36} The district court determined that the record did not support the Commission's decision to grant SkyHigh's variance application. In its decision the district court stated, "And in essence what I'm hearing is, if someone wants to make use of their property and the existing zoning ordinances say it's not allowed, but someone says, 'I want to use it for this purpose anyway,' if a variance is going to be granted on that basis, we don't need variances." The district court then stated that there was no evidence in the record demonstrating the extraordinary hardship that would support the construction of a cellular tower on the property; there was no evidence of "an arbitrary or unreasonable restriction on the property." The district court stated that what the record did show, however, was "that the applicants were not able to put the property to the use ... they intended." The district court stated that this fact did not justify the granting of SkyHigh's variance application.

{37} We believe that the district court's decision was premised on a mistaken belief that the activity that SkyHigh wanted to conduct on the relevant property was prohibited by the code. Respondents appear to share this same belief. However, the code permits the use of telecommunication facilities anywhere within the county. This fact was so found by the Commission. Thus, the manner in which SkyHigh wanted to use the land was appropriate under the code. The Commission determined that since the use was permitted, SkyHigh was actually requesting an area or dimensional variance. Deferring to the Commission's fact-finding, we agree. *See Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998–NMSC–020, ¶ 17, 125 N.M. 401, 962 P.2d 1236 (stating that courts should generally accord deference

to an administrative agency's factual determinations). A use variance allows the property owner to use the property in a manner otherwise prohibited by zoning regulations. *Gould v. Santa Fe County*, 2001–NMCA–107, ¶ 12, 131 N.M. 405, 37 P.3d 122, *overruled on other grounds by Rio Grande*, 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806. Thus, a use variance seeks to change the character of the land by permitting a use otherwise prohibited by zoning regulations. An area or dimensional variance, on the other hand, involves a permitted use but seeks an exemption from zoning regulations with regard to physical limitations. *Id.* Thus, an area or dimensional variance does not seek to change the use of the land, but rather to use the land as allowed under zoning regulations. The code makes no distinction between use variances and area or dimensional variances.

■ {38} Our review of the record leads us to conclude that there was substantial evidence supporting the Commission's determination that strict application of the zoning regulations would create an extraordinary hardship for SkyHigh due to unique circumstances. The Commission found that the topography of the property was "uneven, hilly, at different levels, and otherwise unusual and not conducive to the use of communications towers that are less than the otherwise permitted height." The Commission further found that the special conditions related to wireless communications and the property in particular, "such as the need for unobstructed signal transmission over varying terrain . . . , are such that literal enforcement of the zoning ordinance would result in an unnecessary hardship." The Commission also found that the "[d]enial of the variance would result in inhibiting achievement of the purposes of the code." The Commission apparently concluded that denying the variance would be contrary to the Santa Fe County Growth Management Plan's directive that the county should, "[t]hrough the Community and district design process, design utilities to support and fit into the rural, unique and diverse community character, aesthetics and environment of the County."

{39} The Commission's finding of unique circumstances justifying the consideration of SkyHigh's variance application is supported by the documents and the testimony that were submitted in the case. The evidence shows that the property was at a low level, hilly and uneven. This made it impossible to operate a cellular tower at the restricted height level of 24 feet because the land was not high enough to allow the cellular transmissions to travel over the surrounding mesas and hills. In order for the transmissions to navigate the surrounding hills and mesas, the cellular tower needed at least 198 feet. Also, the height restriction made it impossible to operate a telecommunications facility at the restricted height level due to the conditions required by the technology and the telecommunications industry. SkyHigh's owner Estevan Gonzales testified that due to these conditions, the facility would be unable to provide "any service whatsoever to any wireless provider" at the 24 feet height level.

{40} The Commission also determined that denying the variance would impede the code's utility goals. We defer to the Commission's determination on this fact.

{41} The question that we now must determine is whether there was sufficient evidence to justify the Commission's granting of SkyHigh's variance. The code provides that the Commission may grant the variance when there is sufficient evidence showing that strict compliance with the zoning regulations will result in an arbitrary and unreasonable taking of property or "exact a hardship." There is no contention of a taking in this case. Thus, the only issue is whether the necessary hardship was shown.

{42} "Hardship" is not defined in the code. To determine whether the requisite hardship was shown, the Commission looked at the type of variance that was being sought by SkyHigh. The Commission determined that Skyhigh was requesting an area or dimensional variance. After making this determination, the Commission relied on the case of *Hertzberg v. Zoning Bd. of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), to determine whether SkyHigh's variance should be granted. In *Hertzberg*, the Pennsylvania Supreme Court set forth a standard for determining the "unnecessary hardship" required for an area or dimensional variance. This

standard is less stringent than that required for a use variance. *See id.* at 47–48. Under this standard, multiple factors may be considered in deciding whether to grant an area or dimensional variance, "including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 50. Relying on these factors, the Commission determined that "there would be significant cost and economic detriment to the applicant of erecting multiple, smaller towers." The Commission also determined that "the rural characteristics of the area where the tower is proposed to be located are such that it would be more appropriate to erect a single, larger tower than multiple, small towers."

{43} We cannot say that the Commission's decision to grant the variance was erroneous under the *Hertzberg* standard. Under the *Hertzberg* standard, the property owner does not have to show "that the property is valueless without the variance and cannot be used for any other permitted purpose." *Id.* at 47. Thus, under *Hertzberg,* Respondents' assertion that SkyHigh had to show that it was being denied *all* reasonable use of the property in order to be granted an area or dimensional variance is incorrect. *Hertzberg* provides that unreasonable economic burden is one factor to consider when determining whether to grant an area or dimensional variance. *Id.* at 50. Here, the Commission determined, based on Gonzales's testimony and submitted documents which indicated that the only alternative to one cellular tower was several cellular towers throughout the area, that SkyHigh would suffer an unreasonable economic burden if its variance was not granted.

{44} The Commission noted that denial would also "constitute a prohibition of provision of personal wireless services" under the federal Telecommunications Act of 1996. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II) ("The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof ... shall not prohibit or

have the effect of prohibiting the provision of personal wireless services.").

{45} Another *Hertzberg* factor is the surrounding neighborhood's characteristics. *Hertzberg,* 721 A.2d at 50. Here, the Commission determined, based on Gonzales's testimony and submitted documents regarding multiple towers and "tower slum," that it would be more appropriate to erect one single tower rather than multiple towers due to the rural characteristics of the neighborhood.

{46} The Commission also found that granting the variance would result in a net public benefit. Benefit to the public is another factor that may be considered in the granting of an area or dimensional variance. Kenneth H. Young, *3 Anderson's Am. Law of Zoning* § 20.52, at 597 (4th ed.1996). There was evidence showing that the public would benefit from the granting of the variance. There was evidence showing that the cellular tower would lead to improvements in safety, economic development, and quality of life, through necessary and enhanced wireless services. Schools, businesses, area residents, and local governmental agencies would have access to the newer technologies.

{47} The code provides that a variance may be granted if there is sufficient evidence that the variance "will not result in conditions injurious to health or safety." Here, the Commission concluded that it was precluded under the federal Telecommunications Act of 1996 from denying the variance solely on safety issues. *See* 47 U.S.C. § 332(c)(7)(B)(iv) ("No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.").

{48} The code provides that the variance may not be granted when doing so would nullify the code's purpose. In this case, the Commission found that the granting of the variance "ensures that the spirit of the zoning ordinance will be observed ... and that substantial justice [is] done."

**96**

{49} The Commission also determined that the height variance would be no more than a minimum easing of the code. Estevan Gonzales testified that the height variance "is the minimum height needed for the effectiveness of the antennas to be placed on the tower and in order to reduce the proliferation of multiple towers in the area." "The height requested is the minimum height necessary to provide telecommunication services in the area." The height "is a minimum height needed to support the engineering needs of the wireless service providers." The "height provides space for co-location for multiple service providers."

{50} Our review leads us to accept the conclusions of the Commission. We emphasize first that the code permits the use of telecommunication facilities anywhere within the county. Therefore, Skyhigh did not need a variance to construct the telecommunications tower, only a dimensional variance to amend the height restriction. While we acknowledge that the proposed 198–foot tall tower rose well above the code's 24–foot height restriction and therefore may not appear to be a "minimal" easing of the code, we agree that the increased height was the minimum amount necessary to make the towers effective and to fulfill the purposes of both the code and federal legislation. The 198–foot tower, while surely a burden on adjacent landowners, was the minimum height necessary to provide adequate telecommunication services and to avoid the proliferation of other, shorter towers throughout the county. Therefore, we agree that the benefits provided by the construction of the 198–foot telecommunications tower to the county outweighed the possible burdens placed upon individual members of the county. Thus, we find that the record provides ample support for the conclusion that the requested variance in this case was the minimum variance necessary to afford relief to the applicant and fulfill the directives of both the code and federal legislation.

{51} After reviewing the whole record, we conclude that there was substantial evidence to support the Commission's granting of SkyHigh's variance application. Consequently, we do not address whether the district court's decision violates the federal Telecommunications Act of 1996.

**CONCLUSION**

{52} The Commission's decision approving SkyHigh's variance application was not arbitrary and capricious, and was supported by substantial evidence. Thus, the district court erred in reversing the Commission's decision. We therefore reverse the district court and remand this case for further proceedings consistent with this opinion.

{53} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and EDWARD L. CHÁVEZ, Justices.