This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37507**

**KEERAN 1, LLC; ROBERT KEERAN;
and CYNTHIA KEERAN,**

      Appellants-Respondents,

v.

**CITY OF ALBUQUERQUE,**

Appellee-Petitioner.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Alan M. Malott, District Judge**

Jackson Loman Stanford & Downey, P.C.
J. Douglas Foster
Meghan D. Stanford
Albuquerque, NM

for Respondents

Esteban A. Aguilar Jr., City Attorney
Kevin A. Morrow, Managing Assistant City Attorney
Albuquerque, NM
for Petitioner

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}**    The City of Albuquerque (the City) appeals the district court's order (the December 2017 order) reversing the City's decision that the La Cueva Dip Replacement Project (the LCDRP)[1] was eligible to be funded by impact fees. The City argues that the

---

1The La Cueva channel is a drainage channel that carries storm water from east to west and crosses through Wyoming Boulevard and Eagle Rock Avenue. Between the two roadways, the section of the channel at issue (the dip), was not lined with concrete, and instead consisted of only a soil-cement lining.

district court erroneously relied on narrow definitional grounds contained within the Impact Fees Ordinance (the Ordinance) in ruling that the City's determination was not supported by the record nor in accordance with applicable law, contending that there was a rational relationship between the LCDRP and new development such that it was eligible to be funded by impact fees under the Ordinance. *See* Albuquerque, N.M., Rev. Ordinances ch. 14, art. XIX, §§ 1-34 (2004, amended 2012) (hereinafter ROA).[2] We affirm.

## BACKGROUND

**{2}**     Given that the parties are familiar with the details of this case, we only briefly set forth pertinent facts and applicable law in this memorandum opinion, reserving further discussion of specific facts where necessary to our analysis. *See* Rule 12-405(B) NMRA (providing that appellate courts may dispose of a case by non-precedential order, decision, or memorandum opinion under certain circumstances); *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[M]emorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties[ and s]ince the parties know the details of the case, such an opinion does not describe at length the context of the issue decided[.]").

**{3}**     In 2008, the City awarded approximately $3.2 million in impact fee credits[3] to Keeran 1, LLC, Robert Keeran, and Cynthia Keeran (collectively, Respondents) in exchange for voluntarily building capital improvements in the Far Northeast Service Area. However, in 2014, when Respondents applied for a cash reimbursement of excess impact fee credits under the Ordinance, the City denied its request, claiming there was no unencumbered balance in the City's impact fee account from which the City could reimburse Respondents. Respondents argued that the depleted balance was due to the City's improper use of impact fee funds on the LCDRP—an ineligible project under the Ordinance—and thus, appealed the impact fee administrator's determination regarding the LCDRP to the district court after appeals to the City's Environmental Planning Commission (EPC), the City's Land Use Hearing Officer (LUHO), and the City Council were unsuccessful. *See* ROA § 22. The district court ruled in favor of Respondents, holding the LCDRP was ineligible to be funded by impact fees. The City appeals.

## DISCUSSION

---

In high flow events when water crossed the roadways, the dip was problematic, given the inconvenience and hazard to the traveling public, erosion, and sediment carried by the water and which was prone to deposit on the roadways. The LCDRP, consisting of about one thousand feet of construction, addressed the challenge, diverting the storm water drainage from on top of the roadway to underneath the roadway and replacing the soil-cement lining with a box culvert that connected the two concrete-lined sections of the La Cueva channel.

2All references herein to the Ordinance will be to the 2004 version.

3Impact fees credits are awarded to developers who voluntarily pay the cost of City-approved capital improvements. *See* ROA § 21 (explaining how impact fee credits are awarded). Credits may be applied against future impact fee charges, sold to other developers, or eligible for cash reimbursement from the City in limited circumstances. *Id.*

**{4}** Here, we consider whether the district court's interpretation of the Ordinance was correct and whether the City's determination regarding the LCDRP's eligibility for impact funds in the underlying administrative proceedings was in accordance with law and supported by substantial evidence. On certiorari in an administrative appeal of this type, we employ "the same standard of review used by the district court while also determining whether the district court erred in its review." *Paule v. Santa Fe Cty. Bd. of Cty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240. Our review is limited to ascertaining "whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law." *Id.*; *see also* Rule 1-075(R) NMRA (outlining the standards of review applicable to agency action); Rule 1-074(R) NMRA (same).

**{5}** When applying this administrative standard of review, we will not substitute our judgment for that of the fact-finder, but we review questions of law de novo. *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.2d 806. Interpretation of an ordinance "is a question of law that we review de novo, using the same rules of construction that apply to statutes." *San Pedro Neighborhood Ass'n v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 2009-NMCA-045, ¶ 12, 146 N.M. 106, 206 P.3d 1011.

> The first rule is that the plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent. The court will not read into a statute or ordinance language which is not there, particularly if it makes sense as written. The second rule is to give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them. The third rule dictates that where several sections of a statute are involved, they must be read together so that all parts are given effect.

*Id.* (internal quotation marks and citation omitted). Where language in a statute or ordinance is clear and makes sense as written, there is no need to employ other judicial rules of construction. *See id.*; *Lantz v. Santa Fe Extraterritorial Zoning Auth.*, 2004-NMCA-090, ¶ 7, 136 N.M. 74, 94 P.3d 817. As well, an ordinance or statute must be construed so that no part thereof is rendered surplusage or superfluous. *See Am. Fed'n of State, Cty. & Mun. Emps. v. City of Albuquerque* (*AFSCME*), 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous[.]" (internal quotation marks and citation omitted)).

**{6}** The district court here determined the City's finding—that the LCDRP was eligible for impact fees—was erroneous because under the Ordinance (1) impact fees may only be used for "system improvements" that increase the number of "service units"; and (2) the LCDRP did not add additional service units in the Far Northeast Service Area. *See* ROA §§ 4, 17(A)(1). The City argues that the LCDRP is "rationally related to new development" and thus, is an appropriate expenditure of impact fee

funds, citing to the Ordinance's purpose and the LCDRP's inclusion in the Capital Improvement Plan (CIP) and the Component Capital Improvements Plan (CCIP). We agree with the district court's ruling and explain our reasoning below.

**{7}** To begin, the district court's ruling is directly supported by the New Mexico Development Fees Act (the Act), authorizing the collection, but also governing the use of, impact fees. *See* NMSA 1978, §§ 5-8-1 to -43 (1993, as amended through 2003). Section 5-8-2(I) of the Act explains that impact fees are imposed on new development "to generate revenue for funding or recouping the costs of capital improvements or facility expansions necessitated by and attributable to the *new development*." (Emphasis added.) The Ordinance defines "impact fees" similarly but expands the definition to also include the costs of capital improvements or facility expansions "rationally related to new development in accordance with applicable law." ROA § 4. When any conflict arises between an Act and an ordinance, the Act is dispositive. *See Prot. & Advoc. Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 48, 145 N.M. 156, 195 P.3d 1 (explaining that an ordinance may duplicate or complement statutory regulations, but if the ordinance is inconsistent with a state statute, the state statute controls).

**{8}** In both the Act and Ordinance, "new development" is defined as certain enumerated activities *which increase the number of service units*. *See* § 5-8-2(L) (defining "new development" as "the subdivision of land; reconstruction, redevelopment, conversion, structural alteration, relocation or enlargement of any structure; or any use or extension of the use of land; *any of which increases the number of service units*" (emphasis added)); ROA § 4 (defining new development). The Act and the Ordinance also define "service unit" as "a standardized measure of consumption, use, generation or discharge attributable to an individual unit of development calculated in accordance with generally accepted engineering or planning standards for a particular category of capital improvements or facility expansions." *See* § 5-8-2(P); ROA § 4 (defining service unit). The Ordinance clarifies that with drainage facilities impact fees, relevant to the case at bar, "one service unit [equals] one impervious acre." ROA § 4. Consistent with the definitional language, the Act specifically prohibits the use of impact fees for the "repair, operation or maintenance of *existing* or new capital improvements or facility expansions" and "upgrading, updating, expanding or replacing *existing* capital improvements to provide better service to existing development." *See* § 5-8-5(B), (D) (emphases added). The Ordinance similarly states that other funding sources—and not impact fees—are necessary to cover the cost of curing any deficiencies in drainage facilities that may exist in already-developed areas of the City. ROA § 7(A)-(B).

**{9}** In its December 2017 order, the district court relied on Section 16 of the Ordinance, which states that impact fees "shall be used solely for purpose of planning, design, land acquisition, construction, expansion and development of *system improvements* for the service area from which the impact fees were collected." ROA § 16(A) (emphasis added). The court emphasized that the Ordinance specifically defines "system improvements" as "the addition or provision of *new service units*[,]" noting the definition of "service unit" as "one service unit [equals] one impervious acre." ROA § 4 (emphasis added). Given what is determined to be clear definitional language and

stated limitation on the use of impact fee funds to system improvements within the Ordinance, the district court concluded that the only permissible use of drainage impact fees are when the project increases the number of service units or serves additional impervious acres.

**{10}** The City contends that the district court's reliance on narrow definitions in the Ordinance is misplaced because the LCDRP aligns with the purpose and intent of the Ordinance itself. In relevant part, the Ordinance states:

> The purpose of this [O]rdinance is to ensure the provision of an adequate level of service for drainage facilities throughout the City so that new development may occur in a manner consistent with the City's Planned Growth Strategy . . . The City Council intends, by enactment of this [O]rdinance, to require new development to bear an amount not to exceed its proportionate share of the costs related to the additional drainage facilities that are *rationally related to such new development* in accordance with applicable law.

ROA § 3(B). The City focuses heavily on the language "rationally related to . . . new development" to argue that the Ordinance requires a rational relationship between a capital expenditure and new development—without mention of "service units"—and that the district court erroneously focused on an increase in service units. ROA §§ 3, 7(I). Here, the City fails to explain why this Court should disregard clear definitional language in the Ordinance and the Act, which clearly conditions the use of impact fee funds on an increase in new service units. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We have long held that to present an issue on appeal for review, an appellant must submit argument and authority as required by rule. We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." (emphasis and citations omitted)). Moreover, when interpreting a statute or ordinance, we read its sections together so as to give effect to all of its parts, and we will not disregard specific definitional language. *See AFSCME*, 2013-NMCA-063, ¶ 5; *San Pedro Neighborhood Ass'n*, 2009-NMCA-045, ¶ 12 ("[W]here several sections of a statute are involved, they must be read together so that all parts are given effect." (internal quotation marks and citation omitted)).

**{11}** The City next argues that the LCDRP is rationally related to new development because the LCDRP was listed in the CIP and CCIP. The Ordinance states that "[t]he CIP will contain as an additional component, the list of growth-supporting projects that are funded by impact fees[,]" presumably referring to the CCIP. ROA § 4; *see also* § 5-8-2(E). The Ordinance defines the CCIP—"the Component Capital Improvements Plan"—as a plan "that identifies types of capital improvements or facility expansions for which *impact fees may be assessed . . .* and [is] limited to projects that support growth."[4] ROA § 4 (emphasis added). Assuming, arguendo, that the LCDRP was

---

4The answer brief and the record reflect that there is a dispute as to whether the LCDRP was indeed identified in the CCIP. A member of the task force determining which projects from the CIP should be

included in the CCIP, we note that while listing a project in the CCIP is required for the assessment of fees, it does not dictate its eligibility for impact fee funding. *See* ROA § 4 (defining CCIP); § 9(A) (explaining that CCIP identifies the types of improvement or expansion for which impact fees may be assessed); *see also* § 5-8-5(E). Moreover, both the Act and the Ordinance directly prohibit the use of impact funds on repairing or improving existing deficiencies in drainage facilities. *See* § 5-8-5 (B)-(D); ROA § 7(A)-(B). The proper use of fees collected, as the district court noted, is delineated in Section 16 of the Ordinance as limited to system improvements which increase the number of service units. *See* ROA § 4 (definitions); § 16 (outlining the use of fees collected as limited to system improvements). For these reasons, our review of the applicable law confirms that the district court correctly interpreted the Ordinance as requiring that impact fee expenditures be conditioned on drainage projects that increase new service units (those that permit additional impervious acres), and such an interpretation is consistent with the Act authorizing and conditioning impact fee collection. *See* § 5-8-5(B)-(D); § 5-8-2 (I), (L), (P); ROA § 16.

**{12}** Given our holding, the next consideration is whether or not the LCDRP increased the number of service units by permitting additional impervious acres. Respondents' expert testified that the LCDRP "did not increase or improve drainage capacity and was . . . not necessitated by the prospect of additional drainage from future development. . . . Rather . . . the project was deemed necessary for transportation safety and capacity reasons[.]" The City's witnesses also explained that safety for *existing* residents, businesses, and commuters motivated the "dip crossing" projects and that the LCDRP project was deemed necessary "to provide a safe crossing over the *existing* La Cueva Channel." (Emphases added.) Thus, the district court aptly noted that undisputed testimony establishes that (1) the LCDRP addressed *existing* water drainage problems, including potential inconvenience and hazard to traveling public, erosion, and sediment deposit on roadways, and (2) the LCDRP did not increase the ability of the drainage facility to handle any additional runoff from additional impervious acres. Accordingly, we conclude that the district court properly determined the LCDRP did not increase the number of service units and was therefore ineligible for impact fee funds under the Ordinance, and that the LUHO's recommendation and City Council's adoption thereto were not in accordance with law nor supported by the record.

**CONCLUSION**

**{13}** For the foregoing reasons, we affirm the district court's December 2017 order.

**{14} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

---

included in the CCIP testified that in the years preceding the 2008 LCDRP construction that it was not included in the 2005 nor 2007 CCIPs and was a " 'deficiency' project as opposed to 'growth' project."

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**