## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date:  August 18, 2016**

**NO.  S-1-SC-35286**

**JAMES FLORES and MANNY VILDASOL,**

Plaintiffs-Respondents,

v.

**MARY HERRERA, individually and as Secretary of State of the State of New Mexico, and SECRETARY OF STATE'S OFFICE,**

Defendants-Petitioners.


**ORIGINAL PROCEEDING ON CERTIORARI**
**Sarah M. Singleton and Raymond Z. Ortiz, District Judges**

Cuddy & McCarthy, LLP
M. Karen Kilgore
Evelyn A. Peyton
Santa Fe, NM

Hinkle Shanor, LLP
Ellen S. Casey
Jaclyn M. McLean
Loren S. Foy
Santa Fe, NM

for Petitioners

Garcia Ives Nowara, LLC
Matthew L. Garcia
Albuquerque, NM

for Respondent James Flores

Law Offices of Michael E. Mozes, P.C.
Michael E. Mozes
Albuquerque, NM

for Respondent Manny Vildasol

**OPINION**

**NAKAMURA, Justice.**

{1}    In this case, we are called upon for the first time to interpret the Whistleblower Protection Act (WPA), NMSA 1978, §§ 10-16C-1 to -6 (2010), to resolve a single issue:  Does the WPA allow a state employee to assert a claim against a state officer in the officer's individual capacity?  Mary Herrera, when acting as the Secretary of State, terminated the employment of two employees of the Secretary of State's office, James Flores and Manny Vildasol.  In separate actions, Flores and Vildasol each asserted a WPA claim against Herrera in her individual capacity.  Herrera is no longer the Secretary of State; nevertheless, Flores and Vildasol seek to proceed with their individual-capacity WPA claims against her.  The Court of Appeals concluded that the WPA allowed them to do so.  *See Flores v. Herrera*, 2015-NMCA-072, ¶ 2, 352 P.3d 695, *cert. granted*, 2015-NMCERT-006 (No. 35,286, Jun. 19, 2015).  We disagree.  The WPA does not permit a public employee to assert a claim against a state officer in his or her individual capacity.  Accordingly, we reverse the decision of the Court of Appeals and remand Flores's and Vildasol's cases to their respective district courts for proceedings consistent with this opinion.  Specifically, in Flores's case, we instruct the First Judicial District Court to dismiss Flores's individual-capacity claim against Herrera and, with respect to Flores's official-capacity claim

against Herrera, to enter a substitution order as provided by Rule 1-025(D)(1) NMRA. In Vildasol's case, we instruct the First Judicial District Court to dismiss Vildasol's individual-capacity claim against Herrera and to proceed with Vildasol's claim against the Secretary of State's office.

## I.    BACKGROUND

{2}    Herrera served as the Secretary of State from January 2007 until January 2011. On January 1, 2007, Herrera appointed Vildasol as an office administrator. During his tenure, Vildasol suspected that Secretary of State staff misused public funds and that Herrera violated election laws. Vildasol reported the suspected misconduct to the Federal Bureau of Investigation and the New Mexico Attorney General's Office. On September 4, 2010, Vildasol received a letter from Herrera terminating his employment.

{3}    Flores began working as a public information officer for the Secretary of State when Herrera assumed office in 2007. On August 17, 2010, Herrera placed Flores on administrative leave for allegedly placing two individuals on Flores's press release distribution list. While on administrative leave, Flores was interviewed by FBI Special Agent Leroy Chavez, who was investigating Vildasol's allegations of Herrera's misconduct in office. On August 25, 2010, Flores's attorney prepared a

letter addressed to Herrera. The letter advised Herrera that Flores had been identified as a necessary witness in the ongoing FBI investigation concerning Herrera's activity as the Secretary of State and that Flores had been interviewed by the FBI regarding Herrera's conduct. On September 4, 2010, Flores received a letter from Herrera that terminated his employment. Herrera lost the general election in November 2010 and left office at the end of that year.

{4}     On December 22, 2010, Flores sued Herrera in her individual and official capacities, alleging a violation of Section 10-16C-3. Herrera filed an amended answer on January 6, 2012, and moved to dismiss Flores's WPA claim on February 6, 2012. In her motion to dismiss, Herrera stressed that the WPA prohibits a "public employer" from retaliating against a public employee. Herrera argued that because the WPA does not define "public employer" to include either governmental employees acting in their individual capacities or former elected officials, the district court lacked subject matter jurisdiction over Flores's WPA claim. The district court agreed and granted Herrera's motion to dismiss for lack of subject matter jurisdiction. The district court concluded that Flores cannot recover against Herrera "because she is no longer Secretary of State." Flores timely noticed his appeal.

{5}     On April 1, 2011, Vildasol filed a separate complaint against both the Secretary

3

of State's office and Herrera in her individual capacity. In his complaint, Vildasol asserted a claim for violation of the WPA. Herrera moved to dismiss Vildasol's WPA claim, arguing that the statutory term "public employer" did not encompass Herrera, either as a former public employer or in her individual capacity. On December 9, 2013, the district court denied Herrera's motion to dismiss Vildasol's WPA claim and certified the matter for interlocutory appeal. Herrera timely filed an application for interlocutory appeal. The Court of Appeals granted that application and assigned the case to its general calendar.

{6}     The Court of Appeals consolidated the appeals in Flores's and Vildasol's cases and addressed the issues presented in a single opinion. *Flores*, 2015-NMCA-072, ¶ 1. The Court of Appeals concluded that Herrera's status as a former state officer did not immunize her from liability under the WPA and that Herrera "may be sued pursuant to the Act in her individual capacity." *Id.* ¶ 2 (internal quotation marks omitted). The Court of Appeals affirmed the district court's denial of Herrera's motion to dismiss Vildasol's WPA claim and, after correctly noting that the issues presented do not implicate subject matter jurisdiction, reversed the district court's dismissal of Flores's WPA claim. *Id.* ¶¶ 2, 11-12.

{7}     Herrera petitioned for a writ of certiorari. This Court granted Herrera's

petition, exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972), to consider whether the WPA allows a public employee to assert a whistleblower-retaliation claim against a state officer in his or her individual capacity.

## II.    ANALYSIS

### A.    Standard of Review

{8}    This Court reviews issues of statutory interpretation de novo. *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173.  We construe a statute "in light of its purpose and interpret it to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *Id.* (internal quotation marks and citation omitted).  "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* ¶ 9 (alteration omitted) (internal quotation marks and citation omitted). "We examine the overall structure of the statute and its function in the comprehensive legislative scheme." *Id.*

### B.    The Whistleblower Protection Act

{9}    In 2010, the Legislature enacted the WPA, §§ 10-16C-1 to -6, "to encourage

employees to report illegal practices without fear of reprisal by their employers." *Janet v. Marshall*, 2013-NMCA-037, ¶ 21, 296 P.3d 1253 (internal quotation marks and citation omitted). The WPA promotes transparent government and the rule of law. Its provisions are simple: Section 10-16C-3 prohibits a public employer from taking retaliatory action against a public employee because the public employee communicates information about conduct that the public employee believes in good faith to be unlawful or improper, provides information to a public body as part of an inquiry into an unlawful or improper act, or "objects to or refuses to participate in an activity . . . that constitutes an unlawful or improper act." Section 10-16C-4(A), in turn, creates liability for a "public employer that violates the provisions of the [WPA] . . . for actual damages, reinstatement with the same seniority status that the employee would have had but for the violation, two times the amount of back pay with interest on the back pay and compensation for any special damage sustained as a result of the violation." NMSA 1978, § 10-16C-4(A) (2010). In short, Section 10-16C-3 imposes duties on a "public employer," and Section 10-16C-4(A) subjects a "public employer" to liability for breach of those duties. And the WPA broadly defines "public employer" to include any entity of state government and "every office or officer" of any governmental entity. *See* § 10-16C-2(C)(1)-(4).

6

## C. The WPA Does Not Permit a Public Employee to Assert a Claim Against a State Officer in His or Her Individual Capacity

{10} At its root, this case concerns whether the WPA creates a right of action that a state employee may assert against a current or former state officer in his or her individual capacity, as opposed to the officer's official capacity. In *Kentucky v. Graham*, the United States Supreme Court expounded upon the difference between a suit against a government official in his or her individual or personal capacity and a suit against a government official in his or her official capacity:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. . . . Should the official die pending final resolution of a personal-capacity action, the plaintiff would have to pursue his action against the decedent's estate. In an official-capacity action . . . , death or replacement of the named official will result in automatic substitution of the official's successor in office.

473 U.S. 159, 165-66, 166 n.11 (1985) (internal quotation marks and citations omitted). This distinction aptly frames the parties' positions: Flores and Vildasol

7

maintain that Herrera is liable under the WPA even though she is no longer the Secretary of State and, therefore, the WPA subjects Herrera to a personal-capacity action. Herrera argues that the statute creates an official-capacity suit only.

{11} We hold that the WPA does not create a right of action against a current or former state officer in his or her personal capacity. An abundance of reasons supports this interpretation. First, the text of the WPA provides no indication that the Legislature intended to create a personal-capacity officer suit. The New Mexico Legislature knows how to expressly impose personal liability on a public employee. *See, e.g.*, NMSA 1978, § 41-4-4(E) (2001) (providing that a state entity has the right to recover from a public employee the costs of litigation and damages where the public employee acted fraudulently or with actual malice). And, generally, legislatures know how to expressly create personal-capacity officer suits. The federal statute creating a civil action for the deprivation of federal rights, 42 U.S.C. § 1983 (2012), offers both a quintessential example of a statute creating a personal-capacity officer suit and an illustrative counterpoint to the WPA. Section 1983 provides that "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

8

laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. In *Hafer v. Melo*, the United States Supreme Court determined that "[a] government official in the role of personal-capacity defendant . . . fits comfortably within the statutory term 'person.'" 502 U.S. 21, 27 (1991). Accordingly, this Court has expressly stated that "[g]overnment officials can be sued in their individual capacities for damages under Section 1983 . . . ." *Loya v. Gutierrez*, 2015-NMSC-017, ¶ 45, 350 P.3d 1155.

{12}    In contrast to 42 U.S.C. § 1983, when enacting the WPA, the Legislature provided no textual indication of any intent to impose personal liability on a state officer. The Legislature did not create liability in a "person" who violates the provisions of the WPA. *Cf.* 42 U.S.C. § 1983. Rather, Section 10-16C-4(A) creates liability for a "public employer" who violates the WPA's substantive provisions, and Section 10-16C-2(C)(4) defines a "public employer" to include "every office or officer" of any entity of state government. Those persons who occupy the offices of state government clearly do not act in their individual capacities when they take actions affecting the employment of public employees. When a state officer acts as a "public employer," he or she acts in an official capacity. Thus, without an express indication to the contrary, when the Legislature created liability in a "public employer," § 10-16C-4(A), it created a right of action that runs against a state officer

only in his or her official capacity.

{13} Second, the remedies that Section 10-16C-4(A) provides demonstrate that the WPA creates an official-capacity suit against state officers. Section 10-16C-4(A) creates two kinds of remedies—*viz.*, monetary damages and the injunctive relief of reinstatement of a public employee to his or her former position of employment. The reinstatement remedy may only be effectuated by an officer acting in his or her official capacity and, therefore, connotes that Section 10-16C-4(A) creates an action against state officers only in their official capacities. *See N.M. Pharm. Ass'n v. State*, 1987-NMSC-054, ¶ 8, 106 N.M. 73, 738 P.2d 1318 ("In interpreting statutes, we should read the entire statute as a whole so that each provision may be considered in relation to every other part."). Other state appellate courts have similarly interpreted the complement of remedies created by analogous whistleblower statutes to indicate that those statutes do not create individual liability in state officers. *E.g.*, *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 431 (Ky. 2005) ("The fact that only the Commonwealth or one of its political subdivisions could grant much of the relief afforded by the Act, i.e., 'reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, exemplary or punitive damages, or any combination thereof,' . . . reinforces this Court's conclusion that the

10

Legislature did not intend for policy makers and managers to be individually liable under the Act." (citation omitted)); *Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 669 (Tex. App. 2004) ("[A]ppellant has no private right of action against any of the appellees in their individual capacities.").

{14} Third, to effectuate the remedial purpose of Section 10-16C-4(A), it is simply unnecessary to interpret the WPA to allow personal-capacity officer suits. Statutory claims that are available against governmental officials in their personal capacities offer avenues of relief that circumvent state sovereign immunity. *See, e.g.*, *Reames v. Oklahoma ex rel. Okla. Health Care Auth.*, 411 F.3d 1164, 1168 (10th Cir. 2005) ("The Eleventh Amendment does not prevent plaintiffs from bringing suits against state officials . . . in their individual and personal capacities."). In the WPA, the Legislature did *not* choose to preserve New Mexico's sovereign immunity from suit while concomitantly allowing a form of relief for public employees who suffer retaliatory action at the hands of state officers. To the contrary, in enacting the WPA, the Legislature was manifestly clear that a public employee who suffers a violation of his or her right against retaliatory action may recover directly from a state entity. *See* §§ 10-16C-2(C)(1)-(4), 10-16C-4(A). The WPA expressly permits a public employee to seek against "any department, agency, office, institution, board,

commission, committee, branch or district of state government;" "any political subdivision of the state;" "any entity or instrumentality of the state;" and "every office or officer of any entity" of state government. *See* § 10-16C-2(C)(1)-(4). Where, as in the WPA, the Legislature consents to suit by creating a claim that may be asserted against either state entities or the officers of those entities, we find no reason to interpret the statute as implicitly authorizing personal-capacity officer suits. Such an interpretation is unnecessary to effectuate the WPA's remedy; the Legislature made it plain that a plaintiff may seek recovery directly from the State. Thus, should Flores and Vildasol ultimately prove that Herrera violated Section 10-16C-3, they would recover their respective damages from the Secretary of State's office. Flores and Vildasol conceded this point at oral argument.

{15}     Flores and Vildasol offer no convincing reason why we should interpret the WPA to allow them to recover against Herrera's personal assets. Vildasol suggests that because Sections 10-16C-2(C)(1)-(4) and 10-16C-4(A) provide for suits against governmental entities, the inclusion of "officer" in Section 10-16C-2(C)(4)'s definition of "public employer" is surplusage if not interpreted to authorize a personal-capacity officer suit. We are unpersuaded.

{16}     Section 10-16C-2(C)(4)'s inclusion of the term "officer" has operative effect

even though it does not permit a personal-capacity officer suit. The WPA does not require a plaintiff to name a state entity as a defendant. Hence, in cases where a plaintiff elects not to name a state entity as a defendant, the statutory term "officer" in Section 10-16C-2(C)(4) works to create vicarious liability in a state entity for retaliatory actions taken by officers of that state entity. The inclusion of the statutory term "officer" in the definition of "public employer" ensures that a state entity will be liable if an officer of that entity violates the requirements of the WPA and that a state entity cannot avoid liability merely by arguing that the retaliatory action taken by an officer is outside the scope of his or her employment. *Cf. Cummings*, 163 S.W.3d at 431 (holding that a similar statutory provision in Kentucky's whistleblower-protection act was not surplusage because it "ensure[d] that the Commonwealth . . . will be liable if . . . managers take actions later to be found a violation of the Act, but also to ensure that the Commonwealth . . . cannot avoid liability by arguing that a . . . manager acted outside the scope of his or her employment"). Therefore, this Court is not required to read the WPA as allowing suits against state officers in their personal capacities in order to ensure that the statutory term "officer" has operative effect.

{17}    Vildasol also contends that if the WPA only allowed for official-capacity

officer suits, then a state officer's departure from public employment would preclude a plaintiff's relief. We disagree. If a state officer who is named as a defendant in a WPA suit dies or leaves office pending the final resolution of the plaintiff's action, the defendant's departure from public office would merely result in an automatic substitution of his or her successor in office, and the plaintiff's suit would proceed against the current officer. *See* Rule 1-025(D)(1). If the state officer responsible for the retaliatory action dies or leaves office before the plaintiff commences suit on a WPA claim, then the plaintiff may seek relief from the state entity for which the officer served, so long as the action is brought within two years of the retaliatory action. *See* § 10-16C-6. Accordingly, we disagree with Vildasol's contention that if the WPA did not allow personal-capacity officer suits, its purpose to encourage governmental employees to report illegal or improper conduct would be undermined. The remedies provided for by Section 10-16C-4(A) guarantee against a prospective whistleblower's fear of retaliation, and we need not read the WPA to allow a plaintiff to recover against a state officer's personal assets to ensure the availability of those remedies.

{18} Moreover, to interpret the WPA to allow a plaintiff to seek recovery against a state officer's personal assets could entail undesirable consequences for the operation

14

of state government. Such an interpretation could subject state officers to burdensome and distracting litigation, which, as the Tenth Circuit has noted in other contexts, "could lead to undesirable *ex ante* effects . . . [including] a general disaffection with public service, rooted in the calculation that its costs simply outweigh its benefits." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). Because statutes that impose individual liability on state officers threaten detrimental effects for the operation of state government, when the Legislature has elected to create such personal liability, it has done so explicitly. *See* § 41-4-4(E). In enacting the WPA, the Legislature did not expressly authorize suits against state officers in their personal capacities, and we find no reason to impute such an intention to the statute.

## III.   CONCLUSION

{19}    The WPA does not allow a plaintiff to sue a state officer in the officer's personal capacity. Accordingly, we reverse the decision of the Court of Appeals and remand Flores's and Vildasol's cases to their respective district courts for proceedings consistent with this opinion. In Flores's case, we instruct the district court to dismiss Flores's individual-capacity claim against Herrera and, with respect to Flores's official-capacity claim against Herrera, to enter a substitution order as

15

provided by Rule 1-025(D)(1).  In Vildasol's case, we instruct the district court to dismiss Vildasol's individual-capacity claim against Herrera and to proceed with Vildasol's claim against the Secretary of State's office.

{20}    **IT IS SO ORDERED.**


_____
**JUDITH K. NAKAMURA, Justice**


**WE CONCUR:**


_____
**CHARLES W. DANIELS, Chief Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**BARBARA J. VIGIL, Justice**


16

_____

**C. SHANNON BACON, Judge, sitting by designation**