# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>December 7, 2018</u>

**No. A-1-CA-36131**

**STATE OF NEW MEXICO DEPARTMENT OF GAME AND FISH,**

Appellee-Petitioner,

v.

**TIMOTHY L. RAWLINGS,**

Appellant-Respondent.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

Hector H. Balderas, Attorney General
Regina Ryanczak, Assistant Attorney General
Santa Fe, NM

for Appellee

The Simons Firm, LLP
Quinn Scott Simons
Santa Fe, NM

for Appellant

**OPINION**

**VARGAS, Judge.**

{1}     The New Mexico Department of Game and Fish (Game and Fish) appeals from the district court's order reversing Game and Fish's decision to deny Respondent's application for a New Mexico outfitter's license. Game and Fish raises four issues on appeal. First, Game and Fish argues that its hearing officer's decision to deny Respondent's application for an outfitter's license was supported by substantial evidence in accordance with NMSA 1978, Section 17-2A-3(C)(2) (2001) and 19.30.8.9(A)(6) NMAC. Second, Game and Fish claims that the district court acted arbitrarily and capriciously when it reversed Game and Fish's decision. Third, it contends that the district court erred when it applied Section 17-2A-3(C)(3), rather than Section 17-2A-3(C)(2) to the evaluation of Respondent's outfitter application. Finally, Game and Fish claims that the district court erred when it concluded that Game and Fish violated the Interstate Wildlife Violator Compact (the Compact), NMSA 1978, Section 11-16-1 to -12 (2001). Because we conclude that the actions of the Arizona Commission on which Game and Fish relied to deny Respondent a license are akin to a suspension under our relevant statute and regulations and the Legislature intended for Game and Fish to treat the Respondent's Arizona license "revocation" as if it had occurred in Arizona, pursuant to the Compact, we affirm.

# BACKGROUND

{2}    After working as a licensed hunting guide in New Mexico for three years, Respondent submitted an application for a New Mexico outfitter's license to Game and Fish. Game and Fish denied his application pursuant to Section 17-2A-3(C)(2), which precludes an individual from working as a registered outfitter "if the person has had a guide or outfitter license, registration, permit or certificate revoked in another state." In support of its denial, Game and Fish pointed to a February 21, 2003, action by the Arizona Game and Fish Commission, which unanimously concluded:

> That the license and/or license privileges of [Respondent] to hunt, fish, trap and guide in the State of Arizona be revoked and he be denied another for a period of five years; that the current licenses be suspended as of the date of this hearing and that they be revoked as of the date the order in this case is signed by the director; [and] that he be required to complete the hunter education course and provide proof to the Department's law enforcement branch before applying for any other licenses to hunt in the State [of Arizona.]

Respondent requested an administrative review of Game and Fish's decision, pursuant to Section 17-2A-3(S) and the Uniform Licensing Act (ULA), NMSA 1978, Section 61-1-1 to -34 (1957, as amended through 2016). Following an administrative hearing, the Game and Fish hearing officer entered an order upholding Game and Fish's denial. Respondent appealed to the district court, pursuant to NMSA 1978, Section 39-3-1.1 (1999) and Rule 1-074 NMRA.

3

**{3}** The district court reversed the decision of Game and Fish, finding that Game and Fish acted arbitrarily and capriciously, applied an inapplicable subsection of Section 17-2A-3, and violated the Compact. Game and Fish petitioned this Court for a writ of certiorari, which we granted.

## DISCUSSION

**{4}** Initially, we note that while Game and Fish raised issues of substantial evidence and abuse of discretion by the district court, the only argument developed in its brief involves the district court's interpretation of the relevant statutes and regulations. As such, this case requires us to interpret provisions of our statutes governing our statewide system for hunting activities set out in NMSA 1978, Section 17-2A-1 to -3 (1996, as amended through 2001) and the regulations promulgated pursuant to those statutes, in conjunction with the Compact adopted by our Legislature. Specifically, we must decide whether the action taken by the Arizona Commission constitutes a revocation of Respondent's guide or outfitter license such that he is precluded from "work[ing] as a registered hunting guide or outfitter in New Mexico," pursuant to Section 17-2A-3(C)(2). As all of the arguments on appeal raised by Game and Fish are related, we address them together.

### Standard of Review

4

{5} This Court "conduct[s] the same review of an administrative order as the district court sitting in its appellate capacity[.]" *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. We will not disturb a decision of Game and Fish unless it acted in a manner that is: "[(1)] arbitrary, capricious, or an abuse of discretion; [(2)] not supported by substantial evidence in the record; or [(3)] otherwise not in accordance with law." *Id.* ¶ 17; *see* Rule 1-074. "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande Chapter of Sierra Club*, 2003-NMSC-005, ¶ 17. "A ruling that is not in accordance with law should be reversed if the agency unreasonably or unlawfully misinterprets or misapplies the law." *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 11, 141 N.M. 41, 150 P.3d 991 (internal quotation marks and citation omitted). In considering whether Game and Fish's actions were in accordance with the law, we note that interpretation of a statute is a matter of law that this Court reviews de novo, and we are not bound by Game and Fish's interpretation of the relevant statutes. *See id.* (citing *Rio Grande Chapter of the Sierra Club*, 2003-NMSC-005, ¶ 17).

**Statutory Interpretation**

{6} When interpreting a statute, a court's primary goal is to "facilitate and promote the [L]egislature's purpose." *United Rentals Nw., Inc. v. Yearout Mech.,*

5

*Inc.*, 2010-NMSC-030, ¶ 17, 148 N.M. 426, 237 P.3d 728 (omission, internal quotation marks, and citation omitted). In discerning that purpose, "we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Flores v. Herrera*, 2016-NMSC-033, ¶ 8, 384 P.3d 1070 (internal quotation marks and citation omitted). While the plain meaning rule provides that "statutes are to be given effect as written and, where they are free from ambiguity, there is no room for construction[,]" this rule must be applied with caution, as "a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶¶ 2, 23, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks and citation omitted). Consequently, courts will reject the literal language of the statute if doing so is necessary to "conform to the obvious intent of the [L]egislature, or to prevent its being absurd." *Id.* ¶ 3 (internal quotation marks and citation omitted); *see Baker v. Hedstrom*, 2013-NMSC-043, ¶ 15, 309 P.3d 1047 (indicating that the statute must be interpreted in the context of the statute as a whole with an eye toward its purposes and consequences). We consider all parts of the statute together, "read[ing] the statute in its entirety and constru[ing] each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038,

6

¶ 14, 121 N.M. 764, 918 P.2d 350. Furthermore, a statute "whose construction is in question, [is] to be read in connection with other statutes concerning the same subject matter." *State ex rel. Children, Youth & Families Dep't v. Djamila B.*, 2014-NMCA-045, ¶ 10, 322 P.3d 444 (alteration, internal quotation marks, and citation omitted), *aff'd on other grounds sub nom*, *In re Mahdjid B.*, 2015-NMSC-003, 342 P.3d 698. Finally, we interpret statutes "to avoid rendering the Legislature's language superfluous." *Baker*, 2013-NMSC-043, ¶ 24.

**The District Court Properly Applied Section 17-2A-3(C)(3) to Respondent's Application**

{7}    It is unlawful in New Mexico for a person to work as an unlicensed hunting guide or outfitter. Section 17-2A-3(A). A person who has previously "had a guide or outfitter license, registration, permit or certificate revoked in another state," or suspended in another state without reinstatement, will not "be allowed to work as a registered hunting guide or outfitter in New Mexico." Section 17-2A-3(C)(2), (3). The decision entered by the Arizona Commission "revokes" Respondent's license, precludes him from obtaining another for five years, and requires him to complete a course before he can apply for another license to hunt in Arizona. Respondent was subsequently issued a new license by the Arizona Commission. To determine whether Respondent is precluded from working as a registered hunting guide or outfitter in New Mexico, we are required to consider whether the Arizona

7

Commission's decision constitutes a "revocation" as the term is used in Section 17-2A-3(C)(2).

{8}    We initially consider the meaning of the term "revoke" and its counterpart, "suspend" as they are used in Section 17-2A-3(C), (D). Neither Section 17-2A-3, specifically, nor Chapter 17, generally, provide definitions for the terms "revocation" or "suspension." Instead, the parties direct us to the definitions of "revoke" and "suspend" in the ULA, and in the regulations promulgated by Game and Fish as part of its hunting and fishing regulations. The Uniform Licensing Act provides:

> D.    "revoke a license" means *to prohibit* the conduct authorized by the license;
>
> E.    "suspend a license" means to *prohibit, for a stated period of time,* the conduct authorized by the license. "Suspend a license" also means *to allow*, for a stated period of time, the conduct authorized by the license, *subject to conditions* that are reasonably related to the grounds for suspension[.]

Section 61-1-2(D), (E) (emphases added). The hunting and fishing regulations promulgated by Game and Fish define "[r]evocation" and "[s]uspension" of privileges slightly differently:

> H.    "Revocation" means when a person's hunting, fishing, trapping, guiding and outfitting privileges, or other privileges or authorities granted by an agreement, license or permit issued by the department, *are taken away* by the commission after notice and opportunity for a hearing.

8

I. "Suspension" means when a person's hunting, fishing, trapping, guiding and outfitting privileges, or other privileges or authorities granted by an agreement, license or permit issued by the department, *are taken away* by the commission, after notice and opportunity for a hearing, *until the person comes back into compliance*.

19.31.2.7(H), (I) NMAC (emphases added).

{9} The language of the decision by the Arizona Commission regarding the Respondent's Arizona license does not fit easily into the definitions promulgated by the Legislature contained in the ULA or the definitions promulgated by Game and Fish contained in its regulations. While using the term "revoked," the decision of the Arizona Commission clearly contemplates the possibility of future hunting, fishing, trapping and guide privileges for the Respondent, ordering that "he be denied another [license] for a period of five years . . . [and] that he be required to complete the hunter education course . . . before applying for any other licenses[.]".

{10} Under the ULA and Game and Fish regulations, however, the term "revoke" denotes a finality that cannot be overcome under any circumstances. In the instance of revocation, the conduct permitted by a license is "prohibited" under the ULA, *see* § 61-1-2(D), and "taken away" by the regulations. *See* 19.31.2.7(H) NMAC. Nowhere in the statute or regulation defining "revoke" is the reinstatement of those privileges contemplated. Instead, it is the ULA and Game and Fish regulations defining "suspended" that contemplate the reinstatement of privileges after a stated

9

time or upon compliance with certain conditions. *See* § 61-1-2(E); 19.31.2.7(I) NMAC. Notwithstanding its use of the term "revoked," the Arizona Commission's indication that Respondent may be permitted to recover those privileges after a stated period of time or upon compliance with certain conditions fits more appropriately into the definition of a "suspension" under the ULA and the regulations.

{11}     Game and Fish contends that the Arizona Commission's use of the term "revoked" is dispositive, arguing that had the Arizona Commission intended to "suspend" Respondent, it would have set conditions he must satisfy to lift the suspension. Game and Fish, however, ignores two critical points. First, at least one of the definitions of "suspension" on which it encourages us to rely provides that suspension "means to prohibit, for a stated period of time," which is precisely what happened in this case. The Arizona Commission prohibited Respondent from obtaining a license which would permit him to hunt, fish, trap and guide for five years and subsequently restored his privileges by granting him a new license. *See* § 61-1-2(E). Second, Game and Fish ignores that the Arizona Commission placed conditions on his ability to engage in these activities in the future, requiring that he complete a hunter education course and provide proof before a new license would be issued to him.

10

**{12}** Game and Fish further argues that Respondent's claim "that his revocation was really a suspension . . . . results in a skewed meaning of the statute in its entirety and does not give effect to the objective and purpose of the statute." We disagree. In addition to implementing statutes governing our statewide system for hunting activities, *see* Section 17-2A-1 to -3, our Legislature adopted legislation to address the manner in which New Mexico will recognize and address wildlife violations that occur in other states, including suspensions and revocations of hunting, fishing, trapping and guiding privileges. In 2001 New Mexico adopted the Compact. *See* §§ 11-16-1 to -12. The Compact is an agreement between participating states to, among other things, (1) promote compliance with the statutes, laws, ordinances, and administrative rules relating to the management of wildlife resources in participating states; (2) recognize suspensions of wildlife license privileges by and report convictions to participating states; (3) cooperate in the enforcement of compliance with the terms of citations issued by one participating state to residents of another participating state; and (4) assist court systems in the efficient disposition of wildlife violations. Section 11-16-2(B).

**{13}** The Compact requires that "[a] participating state shall recognize the suspension of license privileges of a person by another participating state as though the violation resulting in the suspension . . . had occurred in the home state; and . . .

11

could have been the basis of the suspension of license privileges in the home state."

Section 11-16-6(A). The Compact does not differentiate between a suspension and a revocation and instead equates them, providing, " *'suspension' means a revocation,* denial or withdrawal of license privileges, including the privilege to apply for, purchase or exercise the benefits conferred by a license." Section 11-16-3(M) (emphasis added). Rather than distinguish between a "suspension" and "revocation," the Compact adopts a policy intended to "recognize the suspension of wildlife license privileges of a person whose license privileges have been suspended by another participating state *and treat the suspension as if it had occurred in the home state*[.]" Section 11-16-2(B)(2) (emphasis added).

{14}    In this case, notwithstanding that the decision of the Arizona Commission stated that it "revoked" Respondent's privileges, it subsequently allowed him to obtain a new license after the proscribed time had passed and he complied with the requirements set out in the decision. The Compact requires us to "recognize the suspension . . . as though the violation . . . had occurred in the home state[,]" Section 11-16-6(A), and the Arizona Commission's decision clearly did not intend to impose the finality that is implied by the definitions of "revoke" set out in the ULA and Game and Fish regulations. *See* § 61-1-2(D); 19.31.2.7(H) NMAC. We conclude that the decision of the Arizona Commission did not constitute a

12

"revocation" of Respondent's Arizona permit so as to prevent him from obtaining a license to work as a registered guide or outfitter, pursuant to Section 17-2A-3(C). The district court properly applied Section 17-2A-3(C)(3) to its evaluation of Respondent's application. While Game and Fish argues that the district court's failure to conclude that Respondent's Arizona license was revoked, as the term is used in Section 17-2A-3(C)(2), renders that section surplusage and leads to an absurd result, we disagree. Both the ULA and Game and Fish's regulations differentiate between "revocation," which has a permanent quality, and "suspension," which is either time-limited or conditional upon compliance with requirements established by Game and Fish. Read together with the Compact, we are persuaded that an applicant who has been permanently prohibited and his right to obtain a license permanently taken away is subject to the provisions of Section 17-2A-3(C)(2), while an applicant whose license has been taken away for a specified period of time or until the applicant comes into compliance with the requirements established by Game and Fish is subject to the provisions of Section 17-2A-3(C)(3). *See Djamila B.*, 2014-NMCA-045, ¶ 10 (stating that "statutes, whose construction is in question [should] be read in connection with other statutes concerning the same subject matter" (internal quotation marks and citation omitted)); *see also Baker*, 2013-NMSC-043, ¶ 24 (stating statutes should be read "to avoid rendering the Legislature's language superfluous"). Indeed, our

13

interpretation comports with the implicit intent of the Legislature in enacting Section 17-2A-3(C)(2), (3) and in adopting the Compact, which clearly contemplates denying licenses to individuals who have been prohibited from holding them in other states. *See United Rentals Nw., Inc.*, 2010-NMSC-030, ¶ 17 (stating that the primary goal of statutory interpretation is "to facilitate and promote the [L]egislature's purpose"(omission, internal quotation marks, and citation omitted)). Our interpretation imputes meaning to both subsections of Section 17-2A-3(C), complies with the objective of the Compact to "recognize the suspension of wildlife license privileges of a person whose privileges have been suspended by another participating state and treat the suspension as if it had occurred in the home state," and avoids reaching an absurd result. Section 11-16-2(B)(2); *see Helman*, 1994-NMSC-023, ¶ 3 (stating that courts should interpret statutes to conform to the obvious intent of the Legislature and avoid an interpretation that renders the statute absurd).

**{15}** As the hearing officer's decision was not in accordance with the law when it denied Respondent's application, relying on Section 17-2A-3(C)(3), we find no error on the part of the district court.

**CONCLUSION**

**{16}** The decision of the district court is affirmed.

**{17}** **IT IS SO ORDERED.**

14

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____

**HENRY M. BOHNHOFF, Judge**

_____

**EMIL J. KIEHNE, Judge**

15